**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSEPH DOELAKEH<br>1926 S. Ithan Street<br>Philadelphia, PA 19143<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA HOSPITAL<br>800 Spruce Street<br>Philadelphia, PA 19107<br><br>Defendant. | CIVIL ACTION<br><br>NO.: ____________________<br><br>**JURY TRIAL DEMANDED** |

**<u>CIVIL ACTION COMPLAINT</u>**

Joseph Doelakeh (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

**<u>INTRODUCTION</u>**

1. Plaintiff has initiated this action to redress violations by Pennsylvania Hospital (hereinafter referred to as "Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.) and the Philadelphia Fair Practices Ordinance ("PFPO"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**<u>JURISDICTION AND VENUE</u>**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Philadelphia Commission on Human Relations ("PCHR"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the PCHR and the EEOC and, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

6. Plaintiff has properly exhausted his administrative remedies regarding his PFPO claims by dual-filing his Charge of Discrimination with the PCHR and receiving a Dismissal and Notice of Rights from the PCHR since the filing before asserting his PFPO claims.

**PARTIES**

7. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

8. Plaintiff is an adult who resides at the above-captioned address.

9. Pennsylvania Hospital, the nation's first hospital, is a private non-profit teaching hospital corporation located at the above-captioned address.

10. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

11. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

12. Plaintiff was employed by Defendant over a year as a full-time Security Officer, beginning on or about February 12, 2024, until his unlawful termination (discussed further *infra*), on or about June 16, 2025.

13. Plaintiff worked from Defendant's 800 Spruce Street, Philadelphia, PA 19107 hospital location.

14. Plaintiff was primarily supervised by Lt. Rahaim Bango (hereinafter "Bango").

15. Throughout Plaintiff's employment with Defendant, Plaintiff was a very hard-working employee who performed his job well.

16. Plaintiff has and continues to suffer from ADA and PFPO-qualifying disabilities, including but not limited to diabetes, high blood pressure, and associated conditions/complications.

17. As a result of Plaintiff's aforementioned disabilities, he suffers from frequent urination and/or occasional incontinence accidents (requiring him to wear an adult diaper at work), hypertension, blood and blood sugar imbalances, and dizziness, which (at times) limits his ability to perform some daily life activities, such as sleeping, urinating with normal frequency, and working (among other daily life activities).

18. Despite Plaintiff's aforesaid health conditions and limitations, Plaintiff was able to perform his job duties well; however, he (at times) required some reasonable medical accommodations (discussed further *infra*).

19. For example, shortly after Plaintiff's hire, he advised Bango that he needed to use the bathroom breaks more than most people because of his diabetes and corresponding frequent urination (a reasonable accommodation under the ADA and PFPO).

20. Defendant's management, however, exhibited clear frustration whenever he reached out to request a bathroom break on the radio.

21. While Plaintiff was advised that Defendant's staff would "find someone," he was rarely (if ever) permitted to take bathroom breaks when he needed to, and as a result he had no choice but to wear diapers because he would have accidents. This was both demeaning and embarrassing for Plaintiff.

22. Notably, Plaintiff was advised by Defendant's management that there was a process for calling out. However, Plaintiff was never provided with the code to use over the radio until about 8 months into his employment with Defendant.

23. Initially, Plaintiff would try to request bathroom breaks, first by saying "Code 1014," which is typical code for a break in the industry, but he was almost always ignored.

24. Plaintiff also requested outright for a bathroom break, and still Defendant's management failed to send someone to relieve him to use the bathroom and he would wet himself and the adult diaper he was forced to wear, because Defendant failed to allow him to take reasonable bathroom breaks as needed.

25. Finally, when Plaintiff was given the code of "Security ED1," which he used regularly, Defendant still failed to relieve him on most occasions to use the bathroom, often speaking to him in a frustrated and hostile way.

26. As a result of Plaintiff holding in his urine so much and not regularly flushing out his kidneys, on or about December 10, 2024, Plaintiff became extremely ill and dizzy at work and

had to go to the Emergency Room ("ER"), where he was given fluids and medication for his diabetes.

27. Then on or about January 28, 2025, Plaintiff called out from work and was seen in his doctor's office for his aforesaid disabilities (a reasonable accommodation under the ADA and PFPO), and he provided a note to Defendant.

28. For the next several months, Plaintiff continued to try to request bathroom breaks as needed with his disabilities, but he was rarely if ever relieved and given the opportunity to use the restroom.

29. Thereafter, on or about June 7, 2025, Plaintiff worked his regular 4 PM to 12 AM shift at the metal detector in the emergency area, and he was the only security officer assigned to the area.

30. At about 10:30 PM on or about June 7, 2025, Plaintiff had to use the restroom. Plaintiff contacted the dispatcher on duty and informed them that he needed to be relieved to use the restroom. However, the dispatcher on duty stated that they would send someone, but no one ever arrived.

31. As a result of no one relieving Plaintiff while on duty alone at 10:30 PM on or about June 7, 2025, Plaintiff urinated on himself and some of the urine soaked through his uniform pants.

32. As set forth *supra*, this is not the only time that Defendant had not responded to Plaintiff's requests for the very reasonable accommodation of using the restroom as discussed above.

33. As a result, Plaintiff was denied a reasonable accommodation based on and for his disabilities.

34. Following Plaintiff's shift on or about June 7, 2025, at approximately 11:40 PM, Plaintiff was informed that he was required to stay on duty to work the 12 AM to 8 AM shift, to ensure that security staff levels were in place.

35. Plaintiff was unable to stay on duty to work the next shift in part because he had urinated on himself as set forth *supra*, that same day, and it had leaked into his pants.

36. Plaintiff did not have another pair of pants with him, and he also began to feel ill working with soaking wet pants and a diaper leaking down his leg.

37. Plaintiff informed the dispatcher on duty, a woman, that he was unable to work that shift due to not feeling well (as a result of his aforesaid health conditions) – another very reasonable medical accommodation under the ADA and PFPO.

38. Nonetheless, at 12 AM, Plaintiff was told to go home, leave his uniform and work ID card in the office, and that his supervisor, Bango, would contact him in two days.

39. On or about June 10, 2025, Bango contacted Plaintiff and wanted to know why he could not work the 12AM to 8 AM shift on June 8, 2025.

40. Plaintiff informed Bango that no one had relieved him to use the restroom, as requested for his aforesaid health conditions, and as a result, Plaintiff urinated on himself and it went through his pants, and he did not have a separate pair of pants.

41. Plaintiff always advised Bango that he had not been feeling well, to which Bango informed Plaintiff that he would contact him again within a few days.

42. To be clear, Plaintiff only needed to refrain from working ***just one overtime shift*** during his tenure with Defendant, because of his aforesaid health conditions, in particular that he was feeling unwell and needed to clean himself up from Defendant's failure to properly accommodate him.

43. Throughout his tenure with Defendant, Plaintiff had repeatedly complained to Human Resources ("HR") that Defendant's management was not allowing him to take breaks as he needed for his aforesaid health conditions, but they simply advised him to talk to his Shift Supervisor, which he did, with no success

44. Then, on or about June 16, 2025, Plaintiff abruptly received a notice from Defendant that he was being terminated for purported gross negligence of established safety procedures and refusing to work a mandated shift.

45. Defendant discriminatorily and retaliatorily terminated Plaintiff despite knowing that he was unable able to stay for the 12 AM shift due to issues related to his disabilities, his requested accommodations, Plaintiff's objections to/complaints of Defendant's failure to properly accommodate his health conditions, by failing to allow him bathroom breaks as needed for his aforesaid disabilities.

46. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, and retaliation because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (discussed *supra*); (4) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*); and (5) Plaintiff's expressed concerns of unfair treatment as result of is health conditions, requested accommodations, and Defendant's failure to accommodate the same.

47. Plaintiff also believes and therefore avers that his disabilities and requested accommodations were motivating and/or determinative factors in the termination of his employment by Defendant.

**COUNT I**
**<u>Violations of the Americans with Disabilities Act, as Amended ("ADA")</u>**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)**

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

50. Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

51. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require some reasonable medical accommodations at times.

52. Plaintiff requested reasonable accommodations from Defendant including but not limited to (1) bathroom breaks as needed for symptoms (frequent urination) of his health conditions; (2) intermittent time off to care for and treat his aforesaid disabilities; and (3) the ability to leave work early/refrain from an overnight shift on one occasion to care for and treat his aforesaid medical conditions.

53. Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/or derogatory treatment because of his aforesaid health conditions and requested accommodations.

54. Plaintiff was abruptly terminated, on or about June 16, 2025, ***just one week*** after requesting and/or utilizing time off to care for and treat his aforesaid health conditions and it's resulting symptoms (urinating on himself), as a result of Defendant's failure to properly accommodate him.

55. Defendant failed to properly accommodate Plaintiff by failing to provide with him with breaks as needed for symptoms (frequent urination) of his disabilities and terminating him for requesting and/or utilizing time off to care for and treat the same.

56. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, and retaliation because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (discussed *supra*); and (4) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*); and (5) Plaintiff's expressed concerns of unfair treatment as result of is health conditions, requested accommodations, and Defendant's failure to accommodate the same.

57. Plaintiff also believes and therefore avers that his disabilities and requested accommodations were motivating and/or determinative factors in the termination of his employment by Defendant.

58. These actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the Philadelphia Fair Practices Ordinance ("PFPO")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)**

59. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60. Plaintiff properly exhausted his administrative remedies regarding his PFPO claims because he timely filed a charge of discrimination with the PCHR and received a Dismissal and Notice of Rights from the PCHR before asserting his PFPO claims

61. The aforesaid allegations also constitute violations of the PFPO. Thus, Plaintiff's PFPO claims mirror the claims as set forth in Count I.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (Attn. No. 91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Dated: September 3, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Joseph Doelakeh | : | CIVIL ACTION |
| v. | : | |
| Pennsylvania Hospital | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| | | |
|---|---|---|
| 9/3/2026 | [signature] | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:____________ Judge:____________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):____________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*____________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DOELAKEH, JOSEPH

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

PENNSYLVANIA HOSPITAL

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - mployment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
ADA (42USC12101)

Brief description of cause:
Violations of the ADA and the PFPO.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: 9/3/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______